BOLIN, Judge.
Plaintiff instituted action against M. F. McCain, operator of a mineral lease, seeking a judgment ordering payment to Birdsong-Gabriel Oil Company of funds being received by McCain from the production under a certain lease in the Sligo Field of Bossier Parish, Louisiana. Plaintiff claims such funds under an assignment from Herman C. Meadows, owner of a one-sixth interest in the lease.
In McCain’s answer to the petition he acknowledged the assignment, but averred he had declined to pay plaintiff a portion of the monthly income from production because a dispute existed between Birdsong-Gabriel Oil Company and Meadows as to the interest conveyed to plaintiff by the assignment. Accordingly, defendant deposited the sum of $3,346.91 in the registry of the court, as in concursus, and asked that *217 the dispute between Meadows and Birdsong-Gabriel Oil Company be adjudicated and that he, McCain, be relieved of further liability to the parties except to deposit future sums due under the lease. The litigation is now between plaintiff and Meadows.
After trial on the merits the court, without written reasons, rendered judgment sustaining the position of Meadows and plaintiff appeals.
The controversy between Birdsong-Gabriel Oil Company and Meadows arose over the interpretation of the act of assignment executed by these parties on April 4, 1960. Plaintiff contends the conveyance vested it with an undivided one-twelfth interest in and to a certain mineral lease in the Sligo Field, while Meadows contends plaintiff only acquired an undivided one-twelfth of assignor’s one-sixth interest or a one-seventy-second interest in the lease.
The facts leading to the execution of the document in question are not in dispute. Plaintiff company had advanced nearly $20,000 to Meadows for the purpose of acquiring certain mineral leases with the understanding that Meadows was to give plaintiff oil payments of $20,000 against a lease in Lincoln Parish, in which plaintiff and Meadows owned an interest. Although assignment of an interest in the Lincoln Parish lease was executed, at the request of Meadows it was not filed of record. Subsequently Meadows received oil payments for the entire interest in that lease for a period of months, the'amount totaling $39,-542, of which $19,771.14 belonged to Birdsong-Gabriel. Meadows made a $10,000 payment on this debt and was allowed a credit of $1,272.87 for certain expenses. The total indebtedness including the $20,000 previously referred to was thus reduced to $28,488.27.
It was to liquidate this indebtedness that Meadows, on April 4, 1960, executed the instrument conveying a certain proportion of his production interests in two separate oil and gas leases, located in Lincoln and Bossier Parishes.
The document, as it affects the Lincoln Parish property, was not disputed. The only matter before the court is the interpretation of the instrument insofar as it conveyed a part of the production in the Bossier Parish lease. All parties agreed that Meadows owned a one-sixth interest m the Bossier lease.
The pertinent portion of the document in question is set forth below, the disputed clause being the last paragraph of the quoted material, underlined and nominated “B”.
“WHEREAS, Herman C. Meadows, husband of Mrs. Kate LeGuin Meadows, is also the owner of an undivided %th interest in and to the following oil, gas and mineral lease, to-wit:
“That certain oil, gas and mineral lease executed by Vernon Elledge, husband of Pearl Wray Elledge, of Houston, Texas, in favor of M. F. McCain, covering the following described land situated in Bossier Parish, Louisiana, to-wit:
“Five acres in a square in the Northwest corner of the Northwest Quarter of the Northeast Quarter, Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana;
said oil, gas and mineral lease being recorded in Conveyance Book 278, Page 177 of the Conveyance Records of Bossier Parish, Louisiana.
“NOW, THEREFORE, the said Grantor, for and in consideration of the sum of One Hundred and No/100 ($100.00) Dollars and other valuable considerations paid by Birdsong-Gabriel Oil Company, a partnership composed of Fred Birdsong, husband of Mrs. Gussie Mae Birdsong, and Carter Gabriel, husband of Mrs. Fredna Ann Gabriel, residents of Smith County, Texas, the receipt of *218 which is hereby acknowledged, has granted, bargained, sold, assigned and conveyed, and does by these presents grant, bargain, sell, convey and assign unto Birdsong-Gabriel Oil Company, a partnership composed of Fred Birdsong and Carter Gabriel, the following described property, to-wit:
“A. An undivided one-half interest in and to all of the remaining interest of Assignor, Herman C. Meadows, in and to the following oil, gas and mineral leases, covering lands located in Lincoln Parish, Louisiana, being an undivided one-half of all of the remaining interest of Herman C. Meadows after taking into consideration the aforesaid five listed conveyances, to-wit: (Description omitted.)
“B. Also an undivided Vinth interest of Assignor, Herman C. Meadows, in and to the following described oil, gas and mineral lease covering lands located in Bossier Parish, Louisiana, to-wit: (Description, supra; emphasis added.)
Meadows contends that inasmuch as the interest in the Lincoln Parish lease was conveyed in the following words, “an undivided one-half interest in and to all of the remaining interest of assignor, Herman C. Meadows”, the conveyance of the interest in the Bossier Parish lease was likewise intended to convey only an undivided one-twelfth interest “of the interest of” assignor Herman C. Meadows. Plaintiff takes the contrary view, i. e., that the insertion of the words “the remaining interest of Herman C. Meadows” in the first clause relating to the Lincoln Parish property and the omission of such restricting words from the second clause relating to the Bossier Parish property made the intent of the parties clear, and that as written, the clause conveys a one-twelfth interest in the lease, NOT a one-twelfth interest in the one-sixth interest of assignor, Herman C. Meadows.
Even though we entertain serious doubts as to any ambiguity in the above instrument, the lower court apparently felt the meaning was not clear, and as a consequence both parties were freely allowed, without objection, to introduce parol testimony pertaining to transactions transpiring between the parties prior to the assignment. We likewise shall consider all such evidence, which may be summarized as follows.
It is agreed the assignment was prepared by plaintiff’s attorney, Turner B. Morgan, now deceased, who for many years was a respected member of the Shreveport Bar. He testified as to conversations, letters and various other preliminary negotiations all to the effect he had been told and led to believe the parties had agreed that one-half of Meadows’ interest in the Bossier Parish lease (which at that time was a one-sixth) would be committed to the repayment of the debt and he so prepared the assignment. He further testified he never, at any time, heard any discussion of it being one-twelfth of Meadows’ one-sixth interest, but was always told it was to be oné-half of his one-sixth, or one-twelfth of the whole. He said Meadows came to his office, took the instrument home with him to consider it, returned to the office and signed it without protesting the correctness of the fractional interest being conveyed. When Mr. Morgan sent McCain a certified copy of the assignment he was forwarded a division order. He wrote Meadows to come to his office and sign this division order but Meadows never came to sign same.
Mr. Morgan’s version of what transpired is amply supported by the testimony of both Mr. Gabriel, one of the partners in plaintiff company, and by Mr. Guinn, a member of the Tyler, Texas Bar, who did the preliminary investigation leading to the final consummation of the agreement.
*219 Mr. Guinn testified plaintiff had agreed permit Meadows to repay the debt at the rate of $500 per month, approximately $300 of which would he derived from the production payments from the Lincoln Parish lease and the remaining $200 from the oil payments from the Bossier Parish lease. In this connection, the documents filed in evidence reflect a one-twelfth interest in the Bossier Parish lease would net approximately $200 per month, while a one-seventy-second interest would net -only $34, a sum clearly not consistent with the alleged purpose of the assignment.
Contradicting the plaintiff’s witnesses is •only the unsupported testimony of Meadows to the effect that he never intended to ■commit more than one-seventy-second interest in the oil payment under the Bossier Parish lease for the liquidation of the debt he admittedly owed plaintiff. It is well to point out the assignment provided that, upon the full and final payment of the indebtedness, Birdsong-Gabriel Oil Company agreed to reassign and reconvey unto the said Herman C. Meadows, his heirs or assigns, the interest covered by this conveyance. Thus it is clear that what is really involved in this controversy is the rate of payment of the debt and not the irrevocable sale of an interest in the lease.
Louisiana courts are guided in their interpretation of contracts by LSA-Civil Code Arts. 1945 through 1967. Pertinent to the decision of the present case are LSA-C.C. Arts. 1945, 1948, 1949, 1950, 1952, 1955 and 1957 generally outlining the matters to be considered in event the intent of the parties is not made clear or .explicit by the written instrument.
Art. 1945:
■“Legal agreements having the effects ■of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established .the following rules:
“First — That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
“Second — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
“Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
“Fourth — -That it is the common intent of the parties — that is, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.”
Art. 1948:
“When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract.”
Art. 1949:
“When there is anything doubtful in one contract, it may be explained by referring to other contracts or agreements made on the same subject between the same parties, before or after the agreement in question.”
Art. 1950:
“When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.”
Art. 1951:
“When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.”
Art. 1952:
“Terms, that present two meanings, must be taken in the sense most congruous to the matter of the contract.”
*220 Art. 1955:
“All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.”
Art. 1957:
“In a doubtful case the agreement is interpreted against him who has contracted the obligation.”
Assuming there is a reasonable doubt as to the intended meaning of the phrase in question, examination of the disputed clause in light of the above quoted articles, the assignment in question and the testimony adduced on the trial convinces us at the time the assignment was executed Meadows intended to and did convey, and Birdsong-Gabriel Oil Company intended to and did receive, one-half of one-sixth interest (or one-twelfth) of the whole lease.
For the reasons assigned, the judgment of the lower court is reversed and set aside and:
It is ordered, adjudged and decreed that judgment be rendered herein in favor of BIRDSONG-GABRIEL OIL COMPANY and against HERMAN C. MEADOWS, ordering the monies deposited into the registry of the court by M. F. McCain be paid over to Birdsong-Gabriel Oil Company; and that McCain be relieved of any further accounting, except to make future royalty payments in accordance with this decree.
It is further ordered, adjudged and decreed that Birdsong-Gabriel Oil Company, a partnership composed of Fred Birdsong and Carter Gabriel, be recognized as the owner of an undivided one-twelfth (Y12) interest in and to that certain oil, gas and mineral lease covering the following described lands located in Bossier Parish, Louisiana, to-wit:
Five (5) acres in a square in the Northwest corner of the Northwest Quarter of the Northeast Quarter of Section 20, Township 17 North, Range 11 West.
Said lease, executed by Vernon Elledge to M. F. McCain, is recorded in Book 278, page 177 of the Conveyance Records of Bossier Parish, Louisiana.
All costs of the lower court, as well as the costs of this appeal, are assessed against Herman C. Meadows.
Reversed and rendered.